**In re Thomas F. PAGE,
Warden, Petitioner.**

No. 99–1145.

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 8, 1999.

Decided Feb. 11, 1999.

Supplemental Opinion on Denial
of Rehearing June 9, 1999.[1]

Domenica Osterberger, Office of the Attorney General, Chicago, IL, for petitioner.

Alan M. Freedman, Midwest Center for Justice, Ltd., Chicago, IL, for Johnny Neal, Jr., party-in-interest.

Before POSNER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.

POSNER, Chief Judge.

In our opinion reported at 170 F.3d 659 (7th Cir.1999), we granted at the behest of the state a writ of mandamus directing the district judge to dismiss Neal's second habeas corpus petition because leave to file a second or subsequent petition must be sought from this court. 28 U.S.C. § 2244(b)(3)(A). We pointed out that because the statute is jurisdictional, the judge was acting beyond his jurisdiction in scheduling a hearing on the petition, and mandamus lies to confine a judge or other official to his jurisdiction.

The key to our decision was the classification of Neal's second petition as indeed "second or successive" within the meaning of the statute. That classification is challenged by the petition for rehearing, and we have thought it proper to amplify our reasons.

Neal's first petition for habeas corpus was denied on the merits. The second petition is based on a decision rendered after that denial. Neal argues that since he could not have included a ground based on that decision in his first petition, he

---

1. The panel has voted unanimously not to rehear the appeal, and a majority of the judges in regular active service did not vote to rehear the appeal en banc. Judges Flaum, Ripple, Rovner, Diane P. Wood, and Evans voted to rehear the appeal en banc.

should not be precluded by the limitations that section 2244(b)(3) places on second or successive petitions for habeas corpus from raising the issue in his new petition, which therefore should not be classified as second or successive.

■ He misses the essential distinction between a dismissal of a petition for habeas corpus for technical procedural reasons, of which the most common is a failure to exhaust state remedies, and a dismissal on the merits. The former type of dismissal does not affect the petitioner's right to file a subsequent petition, because, as the Supreme Court explained in the case on which Neal principally relies, otherwise "a dismissal of a first habeas petition for technical procedural reasons would bar the prisoner from ever obtaining federal habeas review." *Stewart v. Martinez–Villareal,* 523 U.S. 637, ——, 118 S.Ct. 1618, 1622, 140 L.Ed.2d 849 (1998); see also *Benton v. Washington,* 106 F.3d 162, 164 (7th Cir. 1996); *Carlson v. Pitcher,* 137 F.3d 416 (6th Cir.1998); *United States v. Scott,* 124 F.3d 1328 (10th Cir.1997) (per curiam); *In re Gasery,* 116 F.3d 1051 (5th Cir.1997) (per curiam); *Christy v. Horn,* 115 F.3d 201, 208 (3d Cir.1997); *Camarano v. Irvin,* 98 F.3d 44 (2d Cir.1996) (per curiam). In both *Walker v. Roth,* 133 F.3d 454 (7th Cir.1997) (per curiam), and *Shepeck v. United States,* 150 F.3d 800 (7th Cir.1998) (per curiam), two other cases on which Neal relies, the second petition was attacking a second sentence; it was the first challenge to *that* sentence. (See also *In re Cain,* 137 F.3d 234 (5th Cir.1998) (per curiam), and *In re Taylor,* 171 F.3d 185 (4th Cir.1999), the latter of which presents the issue in the context of 28 U.S.C. § 2255, the federal prisoner's habeas corpus substitute.) *Galtieri v. United States,* 128 F.3d 33, 37–38 (2d Cir.1997), refused to extend this principle to the case in which the petitioner was attacking not a new, but merely an amended, sentence. See also *Vancleave v. Norris,* 150 F.3d 926 (8th Cir.1998).

Neal's first petition was disposed of not on a procedural ground, but on the merits.

See *Neal v. Gramley,* 99 F.3d 841 (7th Cir.1996). And his second petition, the one before us now, does not attack a new judgment; it attacks the same judgment that his first petition attacked. His argument is in effect that if there is a *reason* for filing a second petition—a reason why the claim could not have been included in the first petition—then the second petition is really a first petition. But this is equivalent to arguing that a second petition should be treated as a first petition so long as it not an "abuse of the writ." Some of the cases that we have cited for the distinction between a merely procedural dismissal and one that is on the merits do use that term, and these dicta give Neal the principal support for his position. But they have no support in the decisions of this court, or in the statute.

■ Before the enactment of the Antiterrorism and Effective Death Penalty Act, which added section 2244(b)(2) to the habeas corpus statute, specifying the criteria for when a second or successive petition is permitted, the only limitation on a prisoner's right to file successive petitions for federal habeas corpus was the judge-made concept of "abuse of the writ." That concept, an application to the habeas corpus setting of general principles of waiver or forfeiture, was replaced by the new criteria and passed out of the law. As we explained in *Burris v. Parke,* 95 F.3d 465, 469 (7th Cir.1996) (en banc), "The doctrine of abuse of the writ is defunct. The term derives from section 2244(b), now wholly superseded by the new law [i.e., AEDPA], which nowhere uses the term. There is no longer any statutory handle for the doctrine, and in any event its role seems wholly preempted by the detailed provisions of the new statute concerning successive petitions."

If the dicta to which we referred are taken literally, which we do not think it would be a kindness to the courts uttering them to do, AEDPA, rather than tightening up collateral attack on state convictions, made such attacks easier by giving the prisoner two bites at the apple. Un-

der the old law, a petition found to be an abuse of the writ was barred. Period. Under the dicta, a petition that would have been an abuse of the writ under the old law is, under AEDPA, a second or successive petition—which means that it is not automatically barred, that the prisoner can file it even though it is by definition an abuse of the writ, if he can fit it into one of the categories of the new statute. In other words, the prisoner gets to choose between the old abuse of the writ concept and the new statutory concept. Such an interpretation, which we do not think any of the cases we have cited intended, is a slap in the face of Congress.

To see just how anomalous the interpretation would be, consider the first criterion in the new law for when a second or successive petition can be entertained: when "the claim [in the petition] relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, *that was previously unavailable*." 28 U.S.C. § 2244(b)(2)(A) (emphasis added). Neal's argument is that a petition that advances a claim based on a new (hence previously unavailable) case is not a second or successive petition at all; it is a first petition. If this is right, the criterion in subsection A, a criterion for when a second or successive petition is not to be dismissed, would never come into play. Take a simple case. In 1997 the defendant presents his (available) claims and loses on the merits. In 1998 the Supreme Court decides a case that helps the defendant, unexpectedly overruling one of its precedents. In 1999 the defendant files a petition for habeas corpus based on the Supreme Court's case. Is this an initial petition or a second petition? It must be the latter, even though the contention could not have been raised earlier, because section 2244(b)(2)(A) says that a new decision is a reason for appellate authorization to file a second petition (provided the Supreme Court had made the decision retroactive). By Neal's reasoning, the new decision is a reason to go to the district court, not the court of appeals, and to bypass entirely the question

whether the Supreme Court has declared that its decision is retroactive. That can't be right.

There remains the possibility that a claim in no sense abusive, because it could not have been raised earlier, yet not within the dispensation that section 2244(b)(2) grants for the filing of some second or successive petitions, would have sufficient merit that the barring of it would raise an issue under the clause of the Constitution that forbids suspending federal habeas corpus other than in times of rebellion or invasion. U.S. Const., art. I, § 9, cl. 2; *Felker v. Turpin*, 518 U.S. 651, 663–64, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996); *LaGuerre v. Reno*, 164 F.3d 1035, 1038–39 (7th Cir.1998); *In re Davenport*, 147 F.3d 605, 609–11 (7th Cir.1998). But the present case is not the right case in which to consider such a possibility (a possibility that is in any event remote in light of the Supreme Court's holding in *Felker* that "the added restrictions" that section 2244(b)(2) "places on second habeas petitions . . . do not amount to a 'suspension' of the writ contrary to Article I, sec. 9," 518 U.S. at 664, 116 S.Ct. 2333). Neal's second petition does not present a substantial issue of federal law; indeed, it is frivolous. It challenges the denial by the state courts of his claim for state postconviction relief, a claim that rested exclusively on state law. We now know, as explained in our February 11 opinion, that it rested on an erroneous interpretation of state law, which the state supreme court has now corrected. The court applied the correct rule to Neal. He argues that it should have given him the benefit of the earlier, erroneous interpretation, but nothing in the Constitution entitles state defendants to obtain a federal benefit from errors of state law. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

DIANE P. WOOD, with whom ROVNER and EVANS, Circuit Judges, join, dissenting from denial of rehearing *en banc*.

In my view, this case presents two distinct issues that are worthy of the *en banc*

court's attention. The first is the panel's choice of mandamus as the procedural vehicle with which to address the state's contention that the district court was not authorized to entertain Johnny Neal, Jr.'s petition for a writ of habeas corpus on the ground that it was a "second or successive" petition within the meaning of 28 U.S.C. § 2244(b)(3). The second concerns the methodology by which we decide whether a petition that nominally appears to be second or successive requires permission from the court of appeals before it can be filed.

Regardless of whether the panel has come to the correct decision on the second of these two points in this particular case, it is beyond debate that the system inaugurated three years ago by the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") is a complex one. District and appellate judges alike across the country have grappled with such questions as: When has a first petition been dismissed for purely technical reasons, such that it can be disregarded for purposes of § 2244(b)(3), and when has it not? See, e.g., *Martinez–Villareal v. Stewart,* 118 F.3d 628 (9th Cir.1997) (discussing the effect on the renewed presentation of a Ford claim of its prior dismissal in an initial petition on ripeness grounds), aff'd. 523 U.S. 637, ——, 118 S.Ct. 1618, 1622, 140 L.Ed.2d 849 (1998); *Benton v. Washington,* 106 F.3d 162 (7th Cir.1996) (discussing the impact of failing to pay the $5 filing fee for the first petition on a second one). When does a failure to exhaust excuse a first petition from "counting," and when not? See, e.g., *Christy v. Horn,* 115 F.3d 201 (3d Cir.1997); *Camarano v. Irvin,* 98 F.3d 44 (2d Cir.1996). And when should a "second" petition be considered as a first one, because the subject matter of the two cases is distinct (as, for example, when two different prison disciplinary proceedings are implicated), and when not? See, e.g., *Valona v. United States,* 138 F.3d 693 (7th Cir.1998) (holding that prior approval requirements do not apply to proper petitions under 28 U.S.C. § 2241); *In re Taylor,* 171 F.3d 185 (4th Cir.1999) (finding a

second petition challenging a resentencing proceeding not to be successive when the first petition challenged the original sentencing proceeding); *In re Cain,* 137 F.3d 234 (5th Cir.1998) (finding two petitions not to be successive when they challenged two different actions by a prison board).

When the law is so unsettled and complicated, it seems to me inappropriate to use the heavy hand of a writ of mandamus to correct a perceived jurisdictional error on the part of the district court. The mere fact, as the supplemental opinion of the panel notes, that mandamus can lie for the correction of jurisdictional errors does not mean that it is the preferred remedy for such issues. Quite the contrary is true: in the overwhelming majority of cases, this court and all others require parties to save their jurisdictional objections—even those that relate to something as fundamental as subject matter jurisdiction—for an appeal in the ordinary course of events unless there is a compelling reason why appeal would be an inadequate remedy. *E.g., Kerr v. United States Dist. Court,* 426 U.S. 394, 403, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *Ex parte Fahey,* 332 U.S. 258, 260, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947); *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 32, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). Unless the lack of jurisdiction is absolutely clear and irreparable harm would result from the delay attendant to taking an appeal, sound principles of judicial administration counsel in favor of waiting for the appeal to correct a jurisdictional error.

Under the current state of AEDPA law, it is especially appropriate to allow the district court to complete its consideration of the case and to make a full record for appeal. Such a record will often throw light on the district court's reasons for holding that a particular petition was not one subject to the § 2244 procedures. If the court of appeals agrees, then the appeal on the merits can proceed. If the court of appeals disagrees, it has effective procedures at its disposal for correcting the district court's jurisdictional error. If

the district court mischaracterized a petition as one not requiring leave to file from the court of appeals or failed altogether to see the problem, the usual and appropriate response from the court of appeals is to dismiss the action for want of jurisdiction when the petitioner appeals and to direct his or her attention to the requirements of § 2244(b)(3). Alternatively, if a district court has doubts about whether it faces a "first" or a "second" petition within the meaning of AEDPA, it can transfer the case to the court of appeals and invoke the gatekeeping function. See *Mancuso v. Herbert*, 166 F.3d 97, 99 (2d Cir.1999). Errors can occur in the other direction as well and are equally correctable through ordinary procedures. Sometimes applicants contemplating a nominally second petition file first for permission from the court of appeals, only to be told that they have really filed a "first" petition. In those cases, transfer under 28 U.S.C. § 1631 to the district court may be both possible and desirable, especially in light of the strict statute of limitations that applies to collateral proceedings.

Perhaps at some point the rules for distinguishing second or successive petitions from initial ones will become so blindingly clear that a district judge who disregards them should be corrected immediately through a writ of mandamus. I respectfully suggest that we have not yet reached that point. Furthermore, the fact that this court has needed more than three months to consider the petition for rehearing and suggestion for rehearing *en banc* in this case, the fact that a significant number of judges on this court thought that rehearing *en banc* was warranted, and the fact that the panel has responded with a more complete explanation of its reasoning all suggest that the choice of mandamus was an unfortunate one here. Last, it is regrettable, particularly given the flood of petitions under § 2254 that reach us, that the full court does not consider it worth its time to give a more complete elaboration of the standards it will follow in the future for deciding which cases must pass through the § 2244 gate and which fall within the district court's jurisdiction. For these reasons, I dissent from the decision not to rehear this case *en banc*.